# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARCUS HANSERD,

        Petitioner,

Case No. 16-cv-11099

v.

Hon. Matthew F. Leitman

TONY TRIERWEILER,[1]

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF #1) AND AMENDED PETITION (ECF #11), (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Marcus Hanserd is a state prisoner in the custody of the Michigan Department of Corrections. On March 25, 2016, Hansered filed a *pro se* petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* ECF #1.) Hanserd filed an amended petition on November 7, 2016. (*See* ECF #11.) In the petitions, Hanserd challenges his state-court convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); carjacking, Mich. Comp.

---

[1] The proper respondent in a habeas action is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner is the warden of the facility where the petitioner is incarcerated. *See Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). *See also* Rule 2(a), 28 U.S.C. § 2254. Since the filing of the petition, Petitioner Marcus Hanserd has been transferred to the Bellamy Creek Correctional Facility, where Tony Trierweiler is the warden. Therefore, the Court amends the caption to reflect the fact that Trierweiler is the proper Respondent to this action.

Laws § 750.529a; felon in possession of a weapon, Mich. Comp. Laws § 750.224f;

carrying a dangerous weapon with unlawful intent, Mich. Comp. Laws § 750.226,

and four counts of possession of a firearm in the commission of a felony, Mich.

Comp. Laws § 750.227b.

The Court has reviewed Hanserd's claims and concludes that he is not entitled

to federal habeas relief. Accordingly, for the reasons set forth below, the Court will

**DENY** his petitions. The Court will also decline to issue Hanserd a certificate of

appealability. However, it will grant him permission to appeal *in forma pauperis*.

## I

Hanserd was convicted following a jury trial in the Saginaw County Circuit

Court. The Michigan Court of Appeals described the underlying facts as follows:

> Defendant's convictions arise from the murder of Sheric
> Harris and related crimes that occurred after midnight on
> April 17, 2004. Two witnesses testified that defendant had
> committed a robbery at gun point at a Stop N Shop just
> before the shooting occurred at the Circle K party store.
> Defendant was identified by a witness at trial as the
> shooter from the Circle K. The same witness had also
> identified defendant in a corporeal lineup before trial.
> Evidence that the victim had been driving a Camaro, that
> defendant left the scene of the shooting in a Camaro, and
> that defendant's blood was found in the Camaro the victim
> had been driving once it was recovered, was also
> presented.

*People v. Hanserd*, 2012 WL 3966227, at *1 (Mich. Ct. App. Sept. 11, 2012).

Hanserd appealed his convictions to the Michigan Court of Appeals, and that court affirmed. *See id.* Hanserd then sought leave to appeal in the Michigan Supreme Court, and that court denied leave. *See People v. Hanserd*, 828 N.W.2d 45 (Mich. 2013).

Hanserd next filed a post-conviction motion for relief from judgment with the state trial court. That court denied the motion. *See People v. Hanserd,* No. 10-034377-FC-5 (Saginaw Cty. Cir. Ct., Dec. 4, 2013); *reconsideration den.* No. 10-034377-FC-5 (Saginaw Cty. Cir. Ct., Feb. 2, 2014). The Michigan appellate courts denied Hanserd leave to appeal that decision. *See People v. Hanserd,* No. 322993 (Mich. Ct. App. Dec. 11, 2014); *lv. den.* 872 N.W.2d 435 (Mich. 2015).

Hanserd thereafter filed the instant petitions for federal habeas relief in this Court. In those petitions, he seeks relief on the following grounds:

> I. Petitioner's conviction should be overturned because there was insufficient credible evidence, presented at trial to prove that the petitioner was guilty of the crimes.
>
> II. The trial court denied the petitioner a fair trial and his due process rights through improper evidentiary rulings that that [sic] included allowing 404b testimony and denying funds for an e[x]pert on eyewitness identificatio[]n problems; and improper instructional errors.
>
> III. Petitioner was denied his right to a fair trial and effective assistance of trial counsel by his trial counsel's failure to call witnesses to establish petitioner's innocence. US Const, Am VI, XIV; Mich Const. of 1963, art 1 sec 17, 20.

IV. Testimony of the medical examiner that performed the autopsy showed that the crime could not have been committed in the manner the eyewitnesses claimed, and thus there was insufficient evidence to convict the petitioner.

V. Ineffective assistance of trial counsel (for failing to challenge the eyewitness' pre-trial identification).

## II

The majority of Hanserd's claims are reviewed under the standards established in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA"). AEDPA provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of  the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was

unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

Respondent first argues that portions of Hanserd's first and second claims and his fourth claim are procedurally defaulted for various reasons.

Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). This Court believes that it would be more efficient to proceed to the merits of Hanserd's claims, particularly where several of the defaulted claims are interrelated with the properly preserved claims.

Respondent also argues that Hanserd's fifth claim, which Hanserd raised for the first time in his amended habeas petition, is barred by the statute of limitations because the amended petition was filed after the limitations period expired, and the fifth claim does not relate back to the claims filed in the initial petition.

The statute of limitations does not constitute a jurisdictional bar to habeas review. Therefore, a federal court, can, in the interest of judicial economy, proceed directly to the merits of a habeas petition even if the claims therein are barred by a limitations period. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F.3d 426,

429, n. 2 (6th Cir. 2006) (quoting *Trussell v. Bowersox,* 447 F.3d 588, 590 (8th Cir. 2006)). This Court need not resolve the dispute over the timeliness of Hanserd's amended habeas petition. Assuming without deciding that the amended petition was timely, Hanserd's fifth claim fails on the merits for the reasons stated below. *See Ahart v. Bradshaw,* 122 F. App'x 188, 192 (6th Cir. 2005).

## IV

## A

In Hanserd's first and fourth claims, he argues that there was insufficient evidence to convict him of the charged crimes. The question before the Michigan appellate courts on Hanserd's sufficiency-of-the-evidence claims was "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). But, on habeas review under AEPDA, this claim must survive "two layers" of deference:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with

the state court. The federal court instead may do so only if
the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (internal punctuation and citations

omitted). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (noting that

when analyzing a *Jackson* claim on habeas review, reviewing court "cannot even

inquire whether any rational trier of fact would conclude that petitioner [] is guilty

of the offenses with which he was charged.  Instead, [the reviewing court] must

determine whether the [state] Court of Appeals itself was unreasonable in its

conclusion that a rational trier of fact could find [the petitioner] guilty beyond a

reasonable doubt based upon the evidence introduced at trial").

The Court now turns to each of Hanserd's insufficiency-of-the-evidence

claims.

## 1

Hanserd first contends that there was insufficient evidence to establish his

identity as the perpetrator of the crime.  The Michigan Court of Appeals considered

this claim on direct review and rejected it:

> Defendant argues that there were a number of
> inconsistencies between the identifying witness's
> testimony and her previous statements to police that render
> her identification of defendant unreliable.  Additionally,
> defendant argues that there were inconsistencies between
> various witnesses' testimony, further adding to the
> unreliability of the identification. However, all problems
> that defendant points out with the identification are
> credibility and weight issues, which are determinations to

be made by the jury. We will not interfere with the jury's role in determining credibility. When looking at the testimony in a light most favorable to the prosecution, a jury could have reasonably determined that defendant was the shooter. Defendant was identified as the shooter both in court and in a physical lineup before trial. An identification by a witness is sufficient evidence to support a conviction. Additionally, there was evidence that defendant's blood was found in the car the victim had been driving. There was sufficient evidence presented for the jury to reasonably determine that defendant was the shooter.

[….]

The prosecution [also] offered testimony to establish that the victim was driving the Camaro on the night of the shooting, that defendant was the shooter, that defendant drove from the scene in the Camaro, and that defendant's DNA profile matched the DNA profile of the blood samples taken from the Camaro. Given this evidence, the jury could have reasonably inferred that defendant shot the victim, stole the car, and left his DNA in the car. The prosecutor provided enough evidence to prove its theory beyond a reasonable doubt and the jury was responsible for determining what credibility and weight to give the evidence.

*Hanserd*, 2012 WL 3966227, at *2 (internal footnote omitted).

Hanserd has not established that the Michigan Court of Appeals' ruling was contrary to, or an unreasonable application of, clearly established federal law. Here, an eyewitness to the crime – a woman named Dawn Leuders –identified Hanserd at trial as being the shooter based on her personal observation of the crime. That testimony alone was sufficient to support Haserd's convictions, and it forecloses

Hanserd from obtaining federal habeas relief based upon the insufficiency of the evidence. *See Thomas v. Perry,* 553 F. App'x 485, 487–88 (6th Cir. 2014) (rejecting habeas petitioner's sufficiency of evidence claim and affirming denial of habeas relief where eyewitness had identified petitioner as the shooter).

Hanserd counters that there were numerous inconsistencies in Lueders' testimony as well as inconsistencies between the various other witnesses regarding their observations of the shooting. But when a federal court reviewing a state-court conviction on habeas review is "faced with a record of historical facts that supports conflicting inferences[, the federal court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quoting *Jackson*, 443 U.S. at 326). Moreover, the prosecution introduced other evidence that pointed to Hanserd as the perpetrator, such as evidence that Hanserd's blood was found in the stolen Camaro. The existence of this other evidence further confirms that the Michigan Court of Appeals did not unreasonably apply *Jackson* when it rejected Hanserd's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F.3d 908, 919-21 (6th Cir. 2012). Hanserd is therefore not entitled to federal habeas relief on this claim.

Hanserd next claims that there was insufficient evidence to support his convictions because the testimony of the medical examiner established that the murder could not have happened the way that Lueders and other witnesses described the shooting. More specifically, Hanerd argues that Lueders and others testified that he "opened the passenger door and shot into the vehicle three times at point blank range." (Pet., ECF #1 at Pg. ID 63-64.) But Hanserd says that based on the medical examiner's testimony regarding the trajectory of the bullets and where they entered the victim, "[t]he fact that no bullets were travelling in a downward angle, nor from the direction of the suspect, points to the impossibility that the crime occurred in the manner which Ms. Lueders and [another witness] testified to." (*Id.*)

The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant asserts that [the] medical examiner's testimony about bullet paths indicated that the shooting could not have occurred in the manner claimed by the witnesses. However, because it cannot be determined which wounds the victim received first, and the victim was moving around during the incident, there is no definitive indication that the autopsy report was inconsistent with the testimony. Additionally, it was up to the jury to determine what weight to give the evidence.

*Hanserd*, 2012 WL 3966227, at *3.

Hanserd has not established that the Michigan Court of Appeals' ruling was contrary to, or an unreasonable application of, clearly established federal law. Most importantly, Hanserd is wrong when he argues that Lueders testified that he shot the victim at "point blank" range, and that Lueders' testimony is therefore inconsistent with the medical examiner's testimony. Lueders testified only that Hanserd "opened the passenger door[] and shot into the vehicle at the man sitting there." (ECF #10-9 at Pg. ID 491.) Lueders did not testify how far Hanserd was from the victim when Hanserd fired the shots, nor did she testify at what angle Hanserd pointed the gun. Hanserd has not sufficiently shown how that testimony offered by Lueders is inconsistent with the testimony of the medical examiner. Moreover, as noted above, to the extent that there were conflicts in the evidence, it was for the jury, not this Court on habeas review, to resolve those conflicts. *See Jackson*, 443 U.S. at 326. For all of these reasons, the Michigan Court of Appeals' decision affirming the jury's verdict was not contrary to, nor an unreasonable application of, clearly established federal law. Hanserd is therefore not entitled to federal habeas relief on this claim.

**3**

Finally, Hanserd argues that the jury's verdict went against the great weight of the evidence. A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence because that is a "state-law argument" and a "federal court is only allowed to review issues

of federal law in a habeas proceeding." *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). *See also Artis v. Collins,* 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). Hanserd is therefore not entitled to federal habeas relief on this claim.

**B**

Hanserd next alleges that the state trial court deprived him of a fair trial when it allowed the prosecutor to introduce evidence that Hanserd had been involved in a separate armed robbery about thirty minutes before the carjacking and murder. The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant's primary argument is that there were not sufficient special circumstances between the shooting at the Circle K and the robbery at the Stop N Shop to be admissible to prove identity under *Golochowicz.* However, both crimes took place outside convenience stores and both crimes involved the use of a gun. That the caliber of the gun used could have been different is a minor detail that would go to the weight of the evidence rather than the admissibility. See *People v. Barrera,* 451 Mich. 261, 289; 547 NW2d 280 (1996). Both crimes also involved robberies and were committed within a close proximity and a short time of one another. Both crimes involved defendant, as identified by witnesses. The inconsistencies relied on by defendant to establish that the crimes were not similar was information for the jury to determine the weight of the evidence; the differences did not have a bearing on the admissibility of the evidence. *Barrera,* 451 Mich. at 289. The trial court did not abuse its discretion.

*Hanserd*, 2012 WL 3966227, at *5.

Hanserd has not established that the Michigan Court of Appeals' ruling was contrary to, or an unreasonable application of, clearly established federal law. To the extent that the state trial court violated the Michigan Rules of Evidence when it admitted this evidence, that was an error of state law. And, as noted above, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"). This claim is therefore not cognizable on federal habeas review. *See Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Moreover, Hanserd not shown that that the trial court's evidentiary rulings were "so egregious" that they violated his federal due process rights. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (explaining that only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate federal due process rights and warrant federal habeas relief). Hanserd has therefore failed to establish a right to federal habeas relief on this claim.

## C

Hanserd next argues that the state trial court denied him a fair trial when it refused to appoint him an expert to testify about the problems of eyewitness

identification. The Michigan Court of Appeals considered this claim on direct

review and rejected it:

> Defendant goes through a lengthy analysis of *People v. Anderson,* 389 Mich. 155; 205 NW2d 461 (1973), overruled on other grounds in *People v. Hickman,* 470 Mich. 602; 684 NW2d 267 (2004), as well as psychological studies and cases discussing the problems with eyewitness identification. However, nowhere in *Anderson* or current case law is there a holding that eyewitness identifications are inherently unreliable. Defendant does not cite nor is there any current case law that forbids the use of eyewitness identification. Again, the jury is responsible for determining the credibility of eyewitness identification. *Davis,* 241 Mich.App at 700.
>
> Defendant argues that the unreliability of eyewitness identification made an expert necessary for proper investigation and trial testimony. He further asserts that the line-up procedures used in this case were impermissible and suggestive, and that an expert was necessary to explain the effects of a tainted lineup on identification. However, defendant did not object to the lineup procedure when it occurred, nor did defendant object to the in-court identification. Furthermore, the record does not reflect procedures that were impermissibly suggestive. We will not review identification issues on appeal if not raised before the trial court. *People v. Whitfield,* 214 Mich.App 348, 351; 543 NW2d 347 (1995). Moreover, defendant has not demonstrated that he could not safely proceed to trial absent an expert. *Tanner,* 469 Mich. at 443–444. In *People v. Cooper,* 236 Mich.App 643, 658; 601 NW2d 409 (1999) this Court noted that it would be obvious to jurors that memories and perceptions of an eyewitness are sometimes inaccurate. Defense counsel extensively cross-examined each witness and raised the inconsistencies in testimony that defendant points to on appeal. The issues with identification raised by defendant were questions of credibility properly left to

> the determination of the jury. *Davis,* 241 Mich.App at 700.
> The trial court did not abuse its discretion in denying
> defendant's request for an appointed expert. *Tanner,* 469
> Mich. at 442.

*Hanserd*, 2012 WL 3966227, at ** 3-4.

Hanserd has not established that the Michigan Court of Appeals' ruling was contrary to, or an unreasonable application of, clearly established federal law. Hanserd has not identified any Supreme Court case which has recognized that a criminal defendant has a constitutional right to the appointment of this kind of expert witness. And there appears to be law to the contrary. For example, in Moore *v. Tate,* 882 F.2d 1107, 1110-11 (6th Cir. 1989), the Sixth Circuit reversed a district court's grant of a writ of habeas corpus and held that a defendant in a state criminal trial was not denied his constitutional right to a fair trial when the state trial court excluded expert testimony on the reliability of eyewitness identification. The court noted that the examination and cross-examination of the eyewitness at trial afforded the jury an adequate opportunity to assess the reliability of a witness' identification of the defendant. *See id; see also Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001) ("[T]his court has recognized that a habeas petitioner does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification").

The United States Supreme Court precedent that would most closely address petitioner's claim is *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). In *Ake*, the Supreme

Court held that when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must provide a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense. But Hanserd has not identified any Supreme Court precedent that expands *Ake* to the appointment of non-psychiatric experts generally or identification experts specifically. And this Court is aware of none. *See Ford v. Dretke*, 135 F. App'x 769, 771-72 (5th Cir. 2005) (new rule proposed by habeas petitioner, requiring the appointment of an expert on eyewitness identification, did not fall within one of the exceptions to the rule against the application of a new rule on collateral review); *Jackson v. Ylst,* 921 F.2d 882, 886 (9th Cir. 1990) (habeas petitioner's claim that his due process rights were violated when he was denied the appointment of an expert on eyewitness identification proposed a new rule in violation of *Teague v. Lane*, 489 U.S. 288 (1989), and therefore could not serve as a basis for federal habeas relief). Hanserd has therefore not established that he is entitled to federal habeas relief on this claim.

## D

Hanserd next contends that the state trial court erred when it refused the give the jurors an instruction concerning the inherent unreliability of eyewitness identification. At the beginning of trial, defense counsel indicated that he gave the

court and the prosecution a copy of a proposed instruction on the eyewitness identification but he did not specify the contents of that instruction. At the conclusion of trial, defense counsel asked that this instruction be read to the jury. Defense counsel acknowledged that the court was going to read the jurors the standard jury instruction on identification, but counsel also proposed a "custom jury instruction that goes a little bit more in detail and specifically cites holdings and language from *People* v. *Anderson*;[2] that I am still asking the Court to give in addition to or instead of 7.8." (ECF #10-12 at Pg. ID 602.) The prosecutor objected to the proposed instruction on the ground that it took the holding in *Anderson* out of context and that the proposed instruction was more in the form of advocacy than an instruction. The trial court agreed that the proposed instruction appeared "to be somewhat advocacy as opposed to the standard [jury instruction], that's why we do that." (*Id.*) The court therefore defense counsel's request and indicated that it would give the standard jury instruction on identification. (*Id.*)

The Michigan Court of Appeals reviewed this claim on direct appeal and rejected it:

> The trial court gave instructions on the presumption of innocence and the burden of proof. With regard to identification, the trial court denied defendant's request for a special instruction and instead gave the following:

---
[2] *People v. Anderson*, 205 N.W.2d 461 (Mich. 1973).

One of the issues in this case is the identification of defendant as the person who committed the crime. The prosecutor must prove beyond a reasonable doubt that the crime was committed and that the defendant was the person who committed it.

In deciding how dependable an identification is, think about such things as how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness has seen or known the offender before, how far away the witness was, whether the area was well lighted, and the witness's state of mind at that time.

Also, think about the circumstances at the time of the identification, such as how much time had passed as to the crime, how sure the witness was about the identification, and the witness's state of mind during the identification.

You may also consider any times that the witness has failed to identify the defendant or made an identification or gave a description that did not agree with his or her identification of the defendant during trial. You should examine the witness's identification testimony carefully.
You may consider whether other evidence supports the identification, because, then, it may be more reliable. However, you may use the identification testimony alone to convict the defendant as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime.

The trial court also gave an instruction on inconsistent statements and how the jury could use them to determine whether the trial testimony was truthful and to determine the facts of the case.

Defendant's proposed instruction was not a proper recitation of the applicable law. [*People v.* ] *McGhee,* 268 Mich. App [600] at 606 [709 N.W.2d 905 (2005)]. It recapped commentary in [*People v.*] *Anderson* [389 Mich. 155, 205 N.W.2d 461 (1973)] about the problems inherent in eyewitness testimony. However, as discussed above, nowhere in *Anderson* or current case law was there a holding that eyewitness identifications are inherently unreliable. Defendant's proposed instruction skewed *Anderson* and would likely have confused the jury. Defendant's proposed instruction was better suited as a possible defense argument rather than as an instruction for the jury. The instructions given by the trial court adequately protected defendant's rights. The jury had adequate instruction to be able to determine what weight and credibility to give the identification evidence, and the trial court did not abuse its discretion in declining to give the proposed instruction.

*Hanserd*, 2012 WL 3966227, at ** 5–6.

Hanserd has not established that the Michigan Court of Appeals' ruling was contrary to, or an unreasonable application of, clearly established federal law. The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the allegedly-improper instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an "omission or an incomplete instruction[] is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).

Furthermore, the challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *See Jones v. United* States, 527 U.S. 373, 391 (1999).

Hanserd has not met this demanding standard. He has not identified any clearly established federal law that he was entitled to the instruction he sought. Nor has Hanserd established that the state trial court unreasonably applied Supreme Court precedent when it refused to give his proposed instruction. For these reasons, Hanserd has not established that he is entitled to federal habeas relief on this claim.

## E

Hanserd next argues that he was denied the effective assistance of counsel. Federal claims of ineffective assistance of counsel are subject to the deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *See id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688, 689. The "prejudice" component of a *Strickland* claim

"focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Court will now examine each of Hanserd's claims of ineffective assistance in turn.

## 1

Hanserd first argues that his trial counsel was ineffective when counsel failed to call Mitchell Braddock as a witness at trial. Braddock originally contacted the police while he was in prison and indicated that he would be willing to incriminate Hanserd as the shooter in exchange for a sentence reduction. (*See* Exhibits C, D, E, and F to the Petition.) However, at the preliminary examination, Braddock testified both that he did not remember what happened the night of the murder and that he did not see anything. (*See* ECF #10-2 at Pg. ID 301). Braddock further testified that he saw a man identified as "Little Mark" at the convenience store and that "Little Mark" was not Hanserd. (*See id.* at Pg. ID 304.) Braddock then became evasive when the prosecutor tried to refresh his memory, claiming that that he had no memory of the day of the shooting, that he was often "high," and that he did not want to talk about it. (*Id.* at Pg. ID 301-05.) Hanserd insists that Braddock could have

provided testimony that the man identified as "Little Mark," and not Hanserd, was

not the shooter.

The Michigan Court of Appeals reviewed this claim on direct review and

rejected it:

> Defendant argues that counsel should have called a
> witness who testified at the preliminary examination,
> maintaining the witness said that defendant was not the
> shooter. However, defendant mischaracterizes the
> witness's actual testimony. The witness testified that a
> man named "little Mark" was not defendant. However, the
> witness never said that "little Mark", and implicitly not
> defendant, was responsible for the shooting; instead the
> witness claimed he did not remember the events on April
> 17, 2004. Defendant's assertion that trial counsel erred in
> failing to call the witness is meritless. Based on the
> preliminary examination testimony that the witness did not
> remember the incident, the witness would not have helped
> the defense. Additionally, the testimony from the
> preliminary examination did not assist the defense because
> the witness never said "little Mark" and not defendant was
> the shooter.
>
> Defendant maintains that the prosecution's whole case
> was built around the eyewitness's testimony and that if
> called at trial his witness would have testified that
> defendant did not commit the crime. Defendant offers no
> proof to support his position. Defendant cites to a police
> report and letters from the witness; however, this was not
> evidence introduced at trial or included in the lower court
> record. Defendant merely claims that favorable testimony
> would have been offered. However, based on the witness'
> unpredictability, it cannot be said how he would have
> testified. The prosecutor indicated at the preliminary
> examination that the witness was expected to testify
> differently. And the witness consistently maintained
> throughout the preliminary examination that he did not

remember the incident. In light of the evidence offered by
the prosecution at trial and the witness's unpredictability,
defense counsel's decision not to call the witness appears
to have been a sound trial strategy.

*People v. Hanserd*, 2012 WL 3966227, at *7.

Hanserd has not established that the Michigan Court of Appeals' ruling was

contrary to, or an unreasonable application of, clearly established federal law. In the

petition, Hanserd mischaracterizes Braddock's testimony. Braddock did not testify,

as Hanserd claims, that Hanserd was not the shooter. Nor did Braddock testify that

"Little Mark," and not Hanserd, was the shooter. Indeed, Braddock repeatedly said

that he did not remember anything and was unwilling to definitively say anything

about the shooting. It was not ineffective assistance for Hanserd's counsel to not

call a witness who repeatedly testified at the preliminary examination that he had no

information to provide about the shooting. *See Millender v. Adams,* 376 F.3d 520,

527 (6th Cir. 2004) (defense counsel has no obligation to present evidence or

testimony that would not have exculpated the defendant). The Michigan Court of

Appeals' rejection of this ineffective assistance of counsel claim was therefore not

unreasonable. Thus, Hanserd is not entitled to federal habeas relief on this claim.

**2**

In Hanserd's amended habeas petition, he claims that his trial counsel was

ineffective when counsel failed to move for the suppression of Lueders' pre-trial

identification. Hanserd argues that the pre-trial identification should have been

suppressed because (a) there was no counsel present at a photographic lineup and (b) Lueders was informed after she had identified Hanserd at the lineup that she had picked out the right person. Hanserd is not entitled to federal habeas relief with respect to either of these claims.[3]

### a

Hanserd first argues that his trial counsel should have moved to exclude the photographic identification because Hanserd did not have counsel present at the lineup. However, Hanserd has not identified any authority to support the proposition that criminal defendants have a federal constitutional right to have counsel present at a photographic lineup. Indeed, a pre-trial photographic identification is not a critical stage under the Sixth Amendment at which counsel is required to be present. *See United States v. Ash*, 413 U.S. 300, 321 (1973); *Van v. Jones,* 475 F.3d 292, 311 (6th Cir. 2007). The absence of counsel at the photographic lineup therefore provided no basis to suppress the identification. Thus, Hanserd's counsel was not ineffective for failing to move to exclude the identification on that basis. *See United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) (counsel is not ineffective for failing to make a futile objection).

---

[3] As noted in Section III above, Respondent has raised serious arguments that these claims are procedurally defaulted and/or were filed after the expiration of the applicable statute of limitations. However, because the Court concludes that the claims fail on the merits, it will consider them.

**b**

Hanserd next claims that his trial counsel should have moved to suppress the pre-trial identification because the lineup was unduly suggestive. More specifically, Hanserd argues that the officer who conducted the lineup told Lueders after she positively identified Hanserd that she had picked out the right person, and that post-identification statement rendered the lineup inadmissible.

In order to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *See Neil v. Biggers*, 409 U.S. 188 (1972). Courts consider five factors when determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *See id.* at 199-200.

Hanserd has not even attempted to apply that governing test here. Nor has he identified any authority to support his claim that the lineup was rendered unduly suggestive by the officer's comments made *after* Lueders had already positively

identified him. Finally, the Court notes that while reviewing a related claim, the Michigan Court of Appeals stated that the "record does not reflect procedures that were impermissibly suggestive." *Hanserd*, 2012 WSL 3966227, at *4. Simply put, Hanserd has not shown that his counsel had any basis to object to the lineup because it was unduly suggestive. He has therefore failed to establish that his counsel was ineffective for failing to object on this basis. *See Sanders*, 404 F.3d at 986.

As Hanserd has failed to demonstrate entitlement to federal habeas relief with respect to any of his claims, the Court will **DENY** his habeas petition and the amended petition (ECF ## 1, 11).

## V

In order to appeal the Court's decision, Hanserd must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Hanserd has failed to demonstrate entitlement to habeas relief with respect to any of his claims because they are all devoid of merit. Therefore, the Court will **DENY** Hanserd a certificate of appealability.

Finally, although this Court declines to issue Hanserd a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Hanserd's claims, an appeal could be taken in good faith. Accordingly, the Court **GRANTS** Hanserd permission to proceed *in forma pauperis* on appeal.

## VI

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Hanserd's petition for a writ of habeas corpus and his amended petition for a writ of habeas corpus (ECF ## 1, 11), 2) **DENIES** Hanserd a certificate

of appealability, and (3) **GRANTS** Hanserd permission to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: October 30, 2018


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 30, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764